UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JESSICA B.,                                     )
                                                )
        *Plaintiff*                         )
                                                )
v.                                              )   No. 1:17-cv-00294-NT
                                                )
NANCY A. BERRYHILL,                             )
**Deputy Commissioner for Operations,**         )
**Performing the Duties and Functions**         )
**Not Reserved to the Commissioner**            )
**of Social Security,**                         )
                                                )
        *Defendant*                         )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ (i) erroneously discounted the opinions of her medical providers, (ii) failed to adequately evaluate the impact of her obesity, and (iii) erroneously deemed her statements regarding her symptoms and limitations only partially credible. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 5-11. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 12; that, through her date last insured ("DLI"), she had the severe impairments of status-post bilateral mastectomy and breast cancer treatment (now in remission), bipolar disorder, and post-traumatic stress disorder ("PTSD"), Finding 3, *id.*; that, through her DLI, she had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), Finding 5, *id.* at 16-17; that, through her DLI, considering her age (30 years old, defined as a younger individual, on her DLI), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 24; and that she, therefore, had not been disabled from August 13, 2012, her alleged onset date of disability, through December 31, 2013, her DLI, Finding 11, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen,* 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Weight Given to Medical Provider Opinions

#### 1. Opinion of Dr. Dixon

The record indicates that, on May 21, 2014, L. Susan Dixon, M.D. of Counseling Services, Inc., met with the plaintiff for the first time, examined her, and completed a form titled "Medical Source Statement of Ability To Do Work-Related Activities (Mental)." *See* Record at 671-73, 677-79. The form instructed the medical source to provide an opinion of what the individual could still do despite his/her impairments and to base that opinion on the source's "findings with respect to medical history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis." *Id*. at 671.

Dr. Dixon opined that the plaintiff's ability to understand, remember, and carry out instructions – even simple ones – was markedly restricted, as was her ability to make judgments on complex work-related decisions. *See id*. at 671. Asked to identify "the factors (e.g., the particular medical signs, laboratory findings, or other factors described above)" that supported her assessment, she replied: "[status-post] chemotherapy [with] subsequent impairment in memory/cognition[.]" *Id*.

Dr. Dixon also found that the plaintiff had marked limitations in her ability to interact appropriately with the public, supervisors, and coworkers and to respond appropriately to usual work situations and changes in a routine work setting. *See id*. at 672. She identified the factors supporting that assessment as "emotional lability, anxiety[.]" *Id*.

Finally, Dr. Dixon noted that the plaintiff's "ability to manage stress is limited and she has poor adaptational skills at present." *Id*. She described the factor supporting that assessment as "observation[.]" *Id*.

She indicated that these limitations had been present since 2012. *See id*. at 672.

In her progress note of the plaintiff's May 21, 2014, visit, Dr. Dixon indicated that, on mental status examination, the plaintiff was "a tearful, casually dressed white female" who made "good eye contact" and had "mildly rapid" speech, a variable affect and anxious mood, appearing "somewhat agitated at times[,]" but denied suicidal or homicidal thoughts or psychotic symptoms, had no abnormal involuntary movements, and had fair insight and judgment. *Id*. at 678. Dr. Dixon diagnosed bipolar II disorder (unstable), generalized anxiety disorder (unstable), and PTSD, and assessed the plaintiff with a Global Assessment of Functioning ("GAF") score of 50.[2] *See id*.

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,

The ALJ accorded little weight to Dr. Dixon's report, explaining:

> When asked for medical signs, laboratory findings, or other factors to support this assessment, [s]he states only, "observation," but does not describe what [s]he has directly observed to support [her] opinion. The contemporaneous records from the [plaintiff]'s therapist at Counseling Services reflect good eye contact, logical, organized relevant thought content[,] an appropriate mood, being pleasant, engaged and cooperative and sitting throughout the session in June 2014. Moreover there are no medical records to show that Dr. Dixon actually performed a mental status examination at Counseling Services or Psychiatric Associates of Southern Maine.
>
> The undersigned finds Dr. Dixon's report conclusory and against the weight of the record as a whole. The conclusions reached by this physician are not supported by medically acceptable signs, symptoms, and/or laboratory findings, and appear to be based totally on the [plaintiff]'s subjective complaints and out of proportion to the objective evidence obtained during and for the course of treatment. While mental illness and its symptoms are not quantitatively measurable or identifiable on laboratory tests or imaging studies, mental health professionals are trained to make clinical findings based on their observations. In this case, there are no treatment records containing such observations to substantiate such degrees of limitation and there is absolutely no evidence whatsoever to support a marked degree of limitation in the [plaintiff]'s ability to understand, remember and carry out simple instructions, or even in her ability to interact with others. Even though this report is from a specialist, Dr. Dixon's opinion is inconsistent and not supported by the medical evidence as a whole. Therefore, this medical source statement is more akin to an advocacy opinion and thus is accorded little weight.

*Id*. at 22 (citations omitted).

The plaintiff argues that the ALJ erroneously rejected Dr. Dixon's opinion on the improper bases that (i) it constituted an advocacy opinion, (ii) the record contained no evidence that Dr. Dixon had ever examined the plaintiff before issuing her medical source statement, and (iii) it was inconsistent with the record as a whole. *See* Statement of Errors at 6-7. At oral argument, her

---

and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.").

5

counsel added that, while the ALJ had correctly considered Dr. Dixon a "treating source," he erred in not providing the "good reasons" required for the assignment of weight to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

I find no reversible error in the ALJ's evaluation of the Dixon opinion.

First, as counsel for the commissioner contended at oral argument, the ALJ neither characterized Dr. Dixon as a treating source, *see* Record at 22, nor was he required to do so.[3] The plaintiff's counsel cited *Blevins v. Berryhill*, Case No. 5:16cv310-WTH/CAS, 2017 WL 6330823 (N.D. Fla. July 7, 2017) (rec. dec., *aff'd* Dec. 11, 2017), for the proposition that a claimant's ongoing relationship with a medical practice can render an affiliated physician who has examined her only once a treating source. *See Blevins*, 2017 WL 6330823, at *7-9 (applying treating source rule in circumstances in which physician had examined claimant once and completed medical source statement, but claimant had been patient of practice with which physician was affiliated prior thereto).

However, as counsel for the commissioner rejoined, regulations applicable to claims filed before March 27, 2017, define a "treating source" as "your own acceptable medical source who

---

[3] The plaintiff's counsel reasoned that the ALJ deemed Dr. Dixon a treating source because the ALJ cited a regulation applicable to treating sources. *See* Record at 22 (citing 20 C.F.R. § 404.1527(d)). However, as counsel for the commissioner pointed out, subsection (d) is applicable to the evaluation of opinions of non-treating sources, as well. *See* 20 C.F.R. § 404.1527(d).

provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). The regulations elaborate:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

*Id*. Consistent with this definition, this court has rejected the notion that a one-time examination by a physician who is part of a practice group that has had an ongoing relationship with a claimant suffices to transform that physician into the claimant's treating source. *See Brown v. Astrue*, No. 2:10-cv-27-DBH, 2010 WL 5261004, at *3 n.4 (D. Me. Dec. 6, 2010) (rec. dec., *aff'd* Jan. 4, 2011) ("[I]f such piggybacking were allowed under the applicable regulations, any applicant could simply choose a more favorable treating source, see him or her once and provide him or her with all of the applicant's previous treatment records, and the commissioner would have to treat that new treating source as if the treatment relationship had gone on for many years, rendering the length-of-treatment criterion meaningless.").

Because Dr. Dixon was not a treating source, the ALJ was not required to give good reasons for the treatment of her opinion. *See, e.g., Gallant v. Berryhill*, No. 1:16-cv-00380-GZS, 2017 WL 2731303, at *4 (D. Me. June 25, 2017) (rec. dec., *aff'd* July 13, 2017) (ALJ not required to provide "good reasons" for handling of opinion of one-time examining consultant) (citation and internal quotation marks omitted). That he considered it and explained the weight given it sufficed.

In the alternative, even if the ALJ had been required to provide good reasons for his handling of that opinion, he did so. As the commissioner acknowledges, *see* Defendant's

7

Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 3 n.2, the ALJ erred in stating that Dr. Dixon had not examined the plaintiff. Yet, even taking that error into account, and assuming that the ALJ also erred in characterizing the Dixon opinion as an "advocacy opinion," the ALJ still provided good reasons for according even the opinion of a treating source little weight: that it was inconsistent with the record evidence as a whole and not well-supported. *See* Record at 22; *see also* 20 C.F.R. § 404.1527(c)(3)-(4) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. . . . Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("lack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording [even] a treating source's medical opinion little or no weight"); *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *5 (D. Me. June 11, 2017) (rec. dec. *aff'd* July 11, 2017), *appeal docketed*, No. 17-1889 (1st Cir. Sept. 5, 2017) (any error in ALJ's rejection of an opinion on the basis it was an "advocacy opinion" did not warrant remand when ALJ provided other supportable reasons for rejecting the opinion) (citation and internal quotation marks omitted).

The plaintiff asserts that the Dixon opinion is in fact supported by and consistent with not only Dr. Dixon's observations on examination but also those of other treating providers at Counseling Services, Inc., for the period from September 2011 through June 2014 and Psychiatric Associates of Southern Maine for the period from August 2011 through February 2014. *See* Statement of Errors at 6-7.

As the commissioner rejoins, *see* Opposition at 3-6, however, the ALJ's conclusions are supported by substantial evidence. The ALJ supportably concluded both that Dr. Dixon provided minimal support or explanation for her findings of marked restrictions, *see* Record at 671-72, and that her opinion was inconsistent with other evidence of record. That other evidence included not only the opinions of agency nonexamining consultants, *compare id.* at 89-91, 105-107 *with id.* at 671-73, but also treatment notes from providers at both Counseling Services, Inc., and Psychiatric Associates of Southern Maine describing the plaintiff as having relatively normal grooming, hygiene, eye contact, speech, thought processes, attention, and concentration, *see, e.g., id.* at 566, 569, 572, 575, 580-81, 584, 614-43, 675, 680-81.[4]

Remand, accordingly, is unwarranted on the basis of this point of error.

### 2. Opinions of Dr. Brink and F.N.P. Picard

The plaintiff also takes issue with the ALJ's handling of the opinions of her chiropractor, Daniel Brink, D.C. and nurse practitioner, Sandra J. Picard, F.N.P.-B.C., both of whom opined that she had significant physical functional limitations. *See* Statement of Errors at 7-8; Record at 686-91 (Brink opinion), 978-83 (Picard opinion). The plaintiff argues that the ALJ's decision to give little weight to these opinions was "erroneous and not supported by substantial evidence." *See* Statement of Errors at 8. I find no error.

The ALJ addressed both opinions as follows:

> The record also contains a residual functional capacity assessment completed by the [plaintiff]'s chiropractor, Daniel Brink, DC[,] and a report completed by Sandra

---

[4] At oral argument, the plaintiff's counsel complained that records cited in the commissioner's brief in support of the ALJ's weighing of the Dixon opinion were not cited by the ALJ in support of his assessment of that opinion. In so arguing, he alluded to "the rule of *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)," that "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Belanger v. Berryhill*, No. 2:17-cv-00039-JHR, 2018 WL 1144389, at *3 (D. Me. Mar. 2, 2018) (citation and internal quotation marks omitted). However, as counsel for the commissioner rejoined, the commissioner has not raised a new rationale for the handling of the Dixon opinion. Rather, she has disputed the plaintiff's argument that the rationale offered by the ALJ is unsupported by substantial evidence. *See* Opposition at 3-5.

> Picard, [F]NP, dated October 16, 2014. Neither is an acceptable medical source. These too, are unpersuasive because they lack corroboration in the medical record. Dr. Brink sets forth that the [plaintiff] can only sit for 3 hours, stand for 2 hours and walk for 1 hour in an 8-hour workday due to "reduced and painful cervical [and] lumbar ROM; articular dysfunction in cervical [and] lumbar spine on palpation; [and] positive orthopedic tests". Ms. Picard also states the [plaintiff] is limited to even less than sedentary level work and states that "Any activities that require anything consistent would be affected due to neuropathies in hands [and] feet from chemo". Such severe degrees of limitation are not warranted merely by Dr. Brink's comment that she has reduced range of motion and he does not describe what he means by "articular dysfunction" or "positive orthopedic tests." Ms. Picard offers no objective basis for limiting the [plaintiff] to less than sedentary level work. Dr. Brink does note increased muscle tone and tenderness on exam, but again, such findings are insufficient by themselves to warrant such a restrictive assessment. He goes on to state that she [is] able to perform activities such as shopping, ambulating without an assistive device, walking a block on uneven or rough surfaces, using public transportation, climbing a few stairs with a single handrail and car[ing] for her personal needs independently. There is no other medical evidence of record to support such severe limitations on the [plaintiff]'s ability to sit, stand and walk. Neither Dr. Brink nor Ms. Picard has cited to any specific objective diagnostic techniques to corroborate or support such limitations and neither are acceptable medical sources. The record contains no imaging studies or other diagnostic tests establishing any impairment of the spine. For these reasons, their reports are accorded little weight.

Record at 22-23 (citations omitted) (alterations to quoted material in original).

As the commissioner points out, *see* Opposition at 6, Dr. Brink, a chiropractor, and F.N.P. Picard, a nurse practitioner, were not "acceptable medical sources" as that term was then defined, *see* 20 C.F.R. § 404.1513(a) (2016).[5] Social Security Ruling 06-3p ("SSR 06-3p), which was in effect as of the date of the ALJ's decision, required that an ALJ consider opinions from non-acceptable medical sources and explain the weight given to them "or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p,

---

[5] The commissioner revised 20 C.F.R. § 404.1513 effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). I cite the version in effect as of January 26, 2016, the date of the issuance of the ALJ's opinion. *See* Record at 25.

reprinted in *West's Social Security Reporting Service* Rulings 1983-1992 (Supp. 2016), at 333.[6]

The ALJ met that burden. *See* Record at 22-23; *Tucker v. Berryhill*, No. 2:16-cv-301-JHR, 2017 WL 2539750, at *6 (D. Me. June 11, 2017) ("While it would have been error simply to ignore [non-acceptable medical sources'] opinion on the basis that neither was an acceptable medical source, the [ALJ] did not do so. Rather, he considered the opinion, discussed the weight he gave it, and explained why. SSR 06-03p does not require more.") (citations omitted).

However, even if it were necessary to consider the merits of the ALJ's handling of the Brink and Picard opinions, I find no error. The ALJ offered several valid reasons to accord them little weight: that they (i) were authored by non-acceptable medical sources, (ii) failed to explain the severe limitations assessed, and (iii) were uncorroborated by record evidence, including objective findings. *See* Record at 22-23; SSR 06-03p at 332 (fact that source is an acceptable medical source may justify giving his or her opinion greater weight than that of a non-acceptable medical source); *Campagna*, 2017 WL 5037463, at *4 (lack of support and inconsistency with other substantial evidence of record are well recognized bases for affording [even] a treating source's medical opinion little or no weight").

The plaintiff complains that, in so stating, the ALJ overlooked objective evidence buttressing the Picard finding of difficulty using her hands and feet, namely, 2014 and 2015 diagnoses of peripheral neuropathy by Roger C. Inhorn, M.D., of Mercy Oncology-Hematology Center in 2014 and 2015, and objective evidence buttressing the Brink opinion of dysfunction of the cervical and lumbar spine in the form of Dr. Brink's extensive examination and treatment notes from November 2014 through October 2015. *See* Statement of Errors at 8.

---

[6] The commissioner rescinded SSR 06-03p effective for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263, 15263 (Mar. 27, 2017).

However, as the commissioner rejoins, *see* Opposition at 7, those records postdate the plaintiff's DLI.[7] Dr. Inhorn's September 2014 peripheral neuropathy diagnosis, *see* Record at 948, does not undermine the ALJ's observation that, on or prior to the plaintiff's DLI, Dr. Inhorn recorded normal examination results, *see id*. at 20, finding that she had no sensory or motor deficits and intact nerves, *see id*. at 324, 326, 328, 330, 332, 334, 336, 341, 344, 665. For the same reason, Dr. Brink's 2014 and 2015 findings do not evidence cervical or lumbar spinal dysfunction prior to the plaintiff's DLI.

The plaintiff falls short of demonstrating any error in the ALJ's handling of the opinions of F.N.P. Picard or Dr. Brink, and remand is unwarranted on the basis of this point of error.

### B. Impact of the Plaintiff's Obesity

The ALJ found a medically determinable but nonsevere impairment of obesity, stating:

> During the period of time since the alleged onset date, the [plaintiff] has been noted to weigh, on average, 220 pounds, with a body mass index of approximately 43.0. Consideration has been given to the possible effects and impact obesity has on the [plaintiff]'s ability to perform basic work activities. The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone (Social Security Ruling 02-1p ["SSR 02-1p"]).

Record at 13. The plaintiff argues that, in violation of SSR 02-1p, the ALJ never explained what impact, if any, he found her obesity to have. *See* Statement of Errors at 8-9. However, as the commissioner observes, *see* Opposition at 11-12, her failure to identify any evidence that her obesity imposed greater functional limitations than those found by the ALJ precludes remand on the basis of this point of error, *see, e.g.*, *Webber v. Colvin*, No. 2:13-cv-00236-NT, 2014 WL

---

[7] The plaintiff also points to a diagnosis of carpal tunnel syndrome from 2012 that she argues supports Dr. Brink's opinion. *See* Statement of Errors at 8 (citing Record at 835-38). However, as the commissioner argues, because Dr. Brink "did not assess handling, fingering, or feeling limitations or attribute any other limitations to this condition[,]" the carpal tunnel findings are inapposite. Opposition at 7 (citing Record at 688).

12

3530705, at *3 (D. Me. July 15, 2014) (remand based on an ALJ's alleged failure to consider claimant's obesity unwarranted when claimant failed to explain how such consideration would have required a different outcome`).

### C. The ALJ's Credibility Determination

The ALJ found that, while the plaintiff had "gone through a very difficult medical crisis and an extended period of recovery" as a result of her breast cancer, her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible[.]" Record at 21. He explained that the plaintiff had largely recovered from her breast cancer within a year and then from subsequent breast reconstruction surgery within a year. *See id.* He also noted that none of her treating surgeons or oncologists had advised that she was unable to work or restricted her to less than sedentary level work, and that no record corroborated "her testimony that she can only sit or stand for a few minutes at a time or only lift and carry ten pounds." *Id*. He did, however, "accept[] as reasonable [the plaintiff's] allegations of some ongoing discomfort, especially with respect to the use of her arms for reaching or repetitive movements, given her surgeries to the chest and axillary areas[,]" adding that it was also "reasonable to infer some loss of stamina and conditioning that would limit her to light level work with some additional non-exertional limitations to address her complaints of back pain." *Id*.

The ALJ also accepted that the plaintiff suffered from depression and anxiety, "but not to the extent [she] alleged." *Id*. He noted:

> She has never been housebound or required accompaniment at all of her appointments. Her treating therapist and prescribers have noted on very infrequent occasions, that the [plaintiff] had a friend with her, but by no means was such the case on a regular basis. She was noted to be handling her medical issues very well, as well as advocating for her needs, attending school and remaining largely independent in her daily functioning. There are no findings of memory deficits, or even deficits in her attention and concentration. Virtually all of her mental status examinations are unremarkable. She improved with medication and therapy. She

13

> went to breast cancer-related events, such as a basketball game and a camping trip with other survivors. She attended school and even indicated she was making up all of her incomplete work as of December 2013. Her reports of significant financial strain and concern about whether she could continue to go to school seem more reasonably related to her eventual decision to drop out, than to any alleged cognitive issues. Her depression was described mostly as mild, as was her depression [sic]. Her sleep improved with medication. For these reason[s], her allegations are only partially credible.

*Id*. at 21-22.

The plaintiff takes issue with this evaluation, asserting that the ALJ's "findings regarding the timeline of [her] breast cancer and breast reconstruction recovery are erroneous, where the evidence of record demonstrates that she was still receiving treatment for breast cancer, breast reconstruction, and associated peripheral neuropathy in 2014 and 2015, as much as three years after she was initially diagnosed with breast cancer in August of 2012." Statement of Errors at 10 (citing Record at 948-59). She adds that the ALJ drew an impermissible negative inference from the absence of any assessment of work-related limitations by a treating surgeon or oncologist. *See id*. (quoting Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service Rulings 1983-1991* (Supp. 2016) ("SSR 96-7p"), at 133-34, for proposition that "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence").[8]

Finally, she contends that the ALJ erred in deeming her allegations of mental health symptoms and limitations inconsistent with her treatment records and activities of daily living. *See id*. at 11. She incorporates by reference her discussion of the mental health evidence of record

---

[8] Effective March 28, 2016, SSR 96-7p was superseded by Social Security Ruling 16-3p ("SSR 16-3p"). *See* Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017). Although the plaintiff quotes both rulings, *see* Statement of Errors at 10-11, I rely on citation to SSR 96-7p, which was the ruling in effect at the time of the ALJ's January 26, 2016, decision, *see* Record at 25.

14

in connection with her challenge to the rejection of the Dixon opinion and asserts that there was no inconsistency between her testimony and her activities, in particular, her ability to take college courses in 2012 and 2013. *See id*.

SSR 96-7p provides that a "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p at 134.

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

I find no basis on which to disturb the credibility determination made in this case.

First, the fact that the plaintiff received treatment for the after-effects of her breast cancer and reconstruction surgery in 2014 and 2015 does not undermine the ALJ's contention that she had "*largely* recovered" from both within a year. Record at 21 (emphasis added). Even if it did, I agree with the commissioner, *see* Opposition at 9, that any error would be harmless because the ALJ gave other well-supported reasons for finding the plaintiff not entirely credible. *See, e.g., Hadley v. Astrue*, No. 2:10-cv-51-GZS, 2010 WL 5638728, at *3 (D. Me. Dec. 30, 2010) (rec. dec., *aff'd* Jan. 24, 2011) (declining to disturb ALJ's credibility finding when, even if claimant was correct in her assertion that two reasons for the finding were unsupported by the record, the ALJ supplied other well-supported reasons).

Second, the ALJ did not improperly draw a negative inference based on the absence of treating source assessments of work-related limitations. SSR 96-7p requires consideration of "the

15

objective medical evidence" in determining the credibility of an individual's statements. SSR 96-7p at 133. While an ALJ may not disregard an individual's statements *solely* because they are unsubstantiated by objective medical evidence, *see id.* at 132-33, the ALJ did not do so here. To the contrary, he accepted some of the plaintiff's allegations as reasonable in the circumstances. *See* Record at 21.

Finally, the ALJ did not err in deeming the plaintiff's mental health allegations inconsistent with her treatment records or activities of daily living. As discussed above, the ALJ supportably deemed the Dixon opinion inconsistent with other evidence of record, including treatment notes from providers at both Counseling Services, Inc., and Psychiatric Associates of Southern Maine describing the plaintiff as having relatively normal grooming, hygiene, eye contact, speech, thought processes, attention, and concentration. He also reasonably deemed the plaintiff's activities inconsistent with the depression and anxiety symptoms alleged. The plaintiff asserts that, in discussing her ability to take college courses in 2012 and 2013, the ALJ overlooked her testimony on the subject. *See* Statement of Errors at 11; Record at 58-60 (plaintiff's testimony that after August 2012, she was able to take courses only online or when no one else was in the classroom and would freeze up when asked a direct question). However, the ALJ impliedly addressed and discounted this testimony, finding:

> [The plaintiff] attended school and even indicated she was making up all of her incomplete work as of December 2013. Her reports of significant financial strain and concern about whether she could continue to go to school seem more reasonably related to her eventual decision to drop out, than to any alleged cognitive issues. Her depression was described mostly as mild[.] Her sleep improved with medication.

Record at 21-22. As the commissioner points out, *see* Opposition at 11, there was internal inconsistency among the plaintiff's statements, undermining their credibility. While she testified at hearing that she "kept failing [her] classes" during her cancer treatment, Record at 56, she told

16

a treating source in January 2013 that she had done well in three of her classes and, in February 2013, that she was doing very well in school and taking two classes, *see id*. at 635-36.

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 3rd day of June, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge